IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | CASE NO. 5:12-cv-02253 EJD |
| Plaintiff(s), | **ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT** |
| v. | |
| YOUNG NG NGUYEN d/b/a Mr. Krabs, | [Docket Item No(s). 12] |
| Defendant(s). | |

## I. INTRODUCTION

Plaintiff, J & J Sports Productions, Inc. ("Plaintiff") is an international distributor of sports and entertainment programming that purchased the proprietary rights to distribute a certain sporting event, "Manny Pacquiao v. Shane Mosley, WBO Welterweight Championship Fight Program" (the "Event"), which was telecast nationwide on May 7, 2011. In this action, Plaintiff alleges that Defendant Young Ng Nguyen, doing business as Mr. Krabs (hereinafter "Defendant") illegally intercepted and broadcasted the Event in Defendant's place of business.

Plaintiff filed its Complaint on May 4, 2012. See Docket Item No. 1. Defendant failed to answer and default was entered by the clerk on July 23, 2012. See Docket Item No. 11.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331 and personal jurisdiction from service on Defendant in California. See Docket Item No. 5; Burnham v. Super. Ct., 495 U.S. 604. 610-11 (1990).

Presently before the court is Plaintiff's ensuing application for default judgment. See Docket

Item No. 12. That motion will be granted for the reasons explained below.

## II. BACKGROUND

Plaintiff is a commercial distributor and licensor of sports events and was granted the exclusive nationwide commercial distribution rights to the Event. See Compl., at ¶¶ 14, 16. In order for commercial establishments to broadcast the boxing match, owners must purchase a license from Plaintiff. Id. at ¶ 15. Such a license authorizes businesses to publicly exhibit the Event. Id.

On May 7, 2011, investigator Gary Gravelyn viewed a broadcast of the Event at Defendant's restaurant, Mr. Krabs. See Decl. of Affiant, Docket Item No. 12. Plaintiff alleges that Defendant displayed the Event without obtaining the proper license. See Compl., at § 17.

According to Gravelyn, Mr. Krabs' maximum capacity is approximately 50 people, and he counted 31 people in the establishment on the first and second headcounts taken during the broadcast. See Decl. of Affiant. He counted 28 people on the third headcount. Id. Defendant did not charge a cover to enter Mr. Krabs while the Event was broadcast. Id. Gravelyn also stated that a cable box was not visible and that the establishment did not have a satellite dish. Id. He remained in Mr. Krabs for only 8 minutes. Id.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment, known commonly as the "Eitel factors." They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing these factors, all factual allegations in the complaint are taken as true, except those with regard to damages. Televideo Sys.,

Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

## III.   DISCUSSION

### A.   The Eitel Factors

Applying the Eitel factors here, it is clear they favor entry to default judgment against Defendants in this case.

As to the first factor, if Plaintiff's application for default judgment is denied it would be left without a remedy because Defendant has refused to litigate this action. Thus, Plaintiff would be prejudiced if the court were to deny its application for default judgment. This factor weighs in favor of default judgment. See J & J Sports Prods, Inc. v. Concepcion, No. 10-CV-05092, 2011 U.S. Dist. LEXIS 60607, at * 4, 2011 WL 2220101 (N.D. Cal. June 7, 2011).

As to the second and third factors, Plaintiff's substantive claims appear meritorious and its complaint is sufficiently plead. Plaintiff has alleged that Defendant violated two sections of Title 47 and the alleged activities of Defendant appear to have violated at least one of those sections. Additionally, Plaintiff has stated relevant laws pursuant to which the court may provide relief. These factors weigh in favor of default judgment.

As to the fourth factor, the sum of money at stake in this action has yet to be determined but the damages cannot exceed the amounts specified in 47 § U.S.C. 553 (for reasons more fully explained below), and the maximum amount allowable for the tort of conversion. Accordingly, statutory damages cannot exceed $10,000 and enhanced damages may not exceed $50,000. See 47 § U.S.C. 553(c)(3)(A)(ii), (B). Plaintiff is seeking $2,200 in damages for conversion, or the amount Defendant would have been required to pay for the license. All things considered, the relatively small sum of money at stake weighs in favor of default judgment.

As to the fifth factor, there is no dispute of material fact. Indications that there is a dispute of material fact can weigh against entry of default judgment. See Eitel, 782 F.2d at 1471-72. Here, Defendant has not disputed any of Plaintiff's contentions since Defendant failed to respond to either the Complaint or this motion, and all material facts pled in the Complaint are supported or explained by a declaration.

For the sixth factor, it is unlikely that default was the result of excusable neglect. This action

1  was filed over one year ago and the docket reveals that Defendant was properly noticed of this
2  action by substitute service.  In addition, Defendant was served with a copy of the instant
3  application.  Defendant failed to respond despite these notifications.  This factor weighs in favor of
4  default judgment.

5        Finally, the seventh factor also weighs in favor of default judgment because "although
6  federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in
7  situations such as this where defendants refuse to litigate." Concepcion, 2011 U.S. Dist. LEXIS
8  60607, at *5.  Therefore, this general policy is outweighed by the more specific considerations, and
9  the motion to enter default judgment will be granted.

10     **B.**      **Calculation of Damages**

11         **1.**      **Statutory Violations**

12       Plaintiff requests $10,000 in statutory damages as a result of an alleged violation of 47
13 U.S.C. § 605(e)(3)(C)(i)(II), which prohibits any person from receiving or transmitting "wire or
14 radio" signals except through authorized channels.  47 U.S.C. § 605(a).  More specifically, the
15 statute "'prohibits commercial establishments from intercepting and broadcasting to its patron
16 satellite cable programming.'" J & J Sports Prods., Inc. v. Ro, No. 09-CV-02860, 2010 U.S. Dist.
17 LEXIS 21425, at *7, 2010 WL 668065 (N.D. Cal. Feb. 19, 2010) (quoting J & J Sports Prods., Inc.
18 v. Guzman, No. 08-CV-05469, 2009 U.S. Dist. LEXIS 32273, at *5, 2009 WL 1034218 (N.D. Cal.
19 Apr. 16, 2009)).  The statute provides statutory damages ranging from $1,000 to $10,000 for each
20 violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).

21       Plaintiff has not directly requested statutory damages under 47 U.S.C. § 553(c)(3)(ii) in this
22 motion, but has nonetheless alleged that Defendant violated the statute.  Section 553 prohibits "a
23 person from 'intercepting or receiving or assisting in intercepting or receiving any communications
24 service offered over a cable system.'" Ro, 2010 U.S. Dist. LEXIS 21425, at *8 (quoting J&J Sports
25 Prods, Inc., v. Manzano, 2008 U.S. Dist. LEXIS 84931, at *5, 2008 WL 4542962 (N.D. Cal. Sept.
26 29, 2008)).  Section 553 prohibits "both illegally receiving cable programming and helping others to
27 illegally receive cable programming." Manzano, 2008 U.S. Dist. LEXIS 84931, at *5.  Statutory
28 damages under Section 553 range from $250 to a maximum of $10,000, "as the court considers

4
CASE NO. 5:12-cv-02253 EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

1  just." 47 U.S.C. § 553(c)(3)(A)(ii).

2      Sections 605 and 553 are not coextensive because each section prohibits a distinct activity.
3  Indeed, "[a] signal pirate violates section 553 if he intercepts a cable signal, he violates section 605
4  if he intercepts a satellite broadcast." Id. at *6. "But he cannot violate both by a single act of
5  interception." Id. at *6-7.

6      Here, Plaintiff's investigator was unable to determine exactly what means was used by
7  Defendant to intercept the Event, and Plaintiff provided no additional information on this subject
8  beyond the investigator's indefinite affidavit. However, the affidavit does reveal that Mr. Krabs did
9  not have a satellite dish. As a result, the court concludes that Defendant intercepted the program via
10 a cable signal in violation of § 553 and will award damages under that section.

11     In that regard, the court awards Plaintiff $250 in statutory damages under § 553. This
12 amount is appropriate because, as noted, Plaintiff did not develop sufficient facts to justify any
13 increase from the minimum award allowed under the statute. As in other cases before courts of this
14 district, Plaintiff's investigator failed to determine the one fact most critical to this action: the means
15 used to intercept the Event. See, e.g., Ro, 2010 U.S. Dist. LEXIS 21425. Such a presentation - the
16 result of an 8 minute investigation - certainly cannot support a maximum award.

17     As to Plaintiff's request under § 553(c)(3)(B), enhanced damages of no more than $50,000
18 may be warranted if the court finds "that the violation was committed willfully and for purposes of
19 commercial advantage or private financial gain." The Ninth Circuit has not set forth controlling
20 factors for the determination of when enhanced damages are appropriate in this context, but various
21 factors specific to this unique line of cases have been considered by district courts. These include
22 the "use of cover charge, increase in food price during programming, presence of advertisement,
23 number of patrons, number of televisions used, and impact of the offender's conduct on the
24 claimant." Concepcion, 2011 U.S. Dist. LEXIS 60607, at *10. Enhanced damages have also been
25 awarded when the defendant has violated sections 605 or 553 on previous occasions. See J & J
26 Sports Prods., Inc. v. Paniagua, No. 10-CV-05141-LHK, 2011 U.S. Dist. LEXIS 33940, at *5-6,
27 2011 WL 996257 (N.D. Cal. Mar 21, 2011).

28     In this case, Defendant did not charge a cover to patrons nor is there any evidence that

United States District Court
For the Northern District of California

Defendant increased prices or required food or drink purchases during the Event. The relevant numbers are relatively small: five television sets displayed the event to approximately 30 people. Although Plaintiff alleges that Defendant is a repeat offender and cites another case in support of that claim (see G&G Closed Circuit Events, LLC v. Vo, Case No. 5:10-cv-05720 EJD) there is no way to confirm on this evidence that Defendant is same individual involved in the prior action. It was an establishment named Vong Cat, not Mr. Krabs, that was alleged to have displayed the program in the prior action, and adding "a/k/a Vong Cat" to the caption of this case without any other supporting information is insufficient.[1] Accordingly, the court finds that Plaintiff is entitled to $2,200 in enhanced damages - the value of the commercial license to air the program.

### 2. Conversion

Plaintiff requests $2,200 in damages for the tort of conversion. See Cal. Civ. Code § 3336. "The elements of conversion are: 1) ownership of a right to possession of property; 2) wrongful dissolution of the property right of another; and 3) damages." Paniagua, 2011 U.S. Dist. LEXIS 33940, at *6. Damages for the tort of conversion are "based on the value of the property at the time of the conversion." Id.

Here, Plaintiff has shown that it owns the right to distribute the boxing match at issue and has properly alleged the misappropriation of that right to distribute the program. As to damages, the "value of the property" was the value of the commercial license, or $2,200. Accordingly, the court awards Plaintiff $2,200 in damages for conversion.

---

[1] In fact, the Complaint contains incorrect information. Plaintiff alleges that "Defendant Young Ng Nguyen is the sole individual specifically identified on the California Alcoholic Beverage and Control License issued for Mr. Krabs a/k/a Vong Cat (ABC # 483784)." That is only partially true. While that license number does correspond to an establishment named Vong Cat, Young Ng Nguyen is not an individual associated with that license, let alone the sole individual. See Website for Cal. Dep't. of Alcoholic Beverage Control, http://www.abc.ca.gov (results for license number 483784) (accessed July 22, 2013). Indeed, there are two individuals associated with that license, Young *Ngoc* Nguyen and Thao Xuan Vo. Id. The court takes judicial notice of this information.

Moreover, expired license number 483784 was not issued to Mr. Krabs. The license number associated with Mr. Krabs is 516670, which identifies an individual named Phuoc Hung Vo - not Young Ng Nguyen - as the primary owner. Id. (results for license number 516670) (accessed July 22, 2013). The court takes judicial notice of this information as well.

### IV. ORDER

Based on the foregoing, Plaintiff's application for default judgment (Docket Item No. 12) is GRANTED. Judgment shall be entered in favor of Plaintiff and against Defendant in the amount of $4,650 in total damages. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 22, 2013


EDWARD J. DAVILA
United States District Judge